## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                    Criminal No. 13-129(1) (DWF/FLN)

          Plaintiff,

v.                                           **ORDER AND MEMORANDUM**

Frantz Pierre,

          Defendant.

This matter is before the Court on Defendant Frantz Pierre's ("Defendant") motion to dismiss for prosecutorial misconduct, (Doc. No. 188), and Defendant's motion to dismiss for violation of the Fifth Amendment prohibition against Double jeopardy. (Doc. No. 189.) The government opposes both of Defendant's motions. (Doc. Nos. 193 & 194.) For the reasons set forth in the Court's Memorandum, the Court denies Defendant's motions.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Frantz Pierre's Motion to Dismiss (Doc. No. [188]) is **DENIED**.

2. Defendant Frantz Pierre's Supplemental Motion to Dismiss for a Violation of the Fifth Amendment Prohibition Against Double Jeopardy (Doc. No. [189]) is **DENIED**.

Dated: August 6, 2014        s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge

## MEMORANDUM

I.  **BACKGROUND**

    A.  **Defendant's Double Jeopardy Motion**

On September 21, 2012, a federal grand jury in the Southern District of Florida returned a 13-count indictment charging Defendant and two co-defendants, Terry Pierre and Christmanie Bissaine, with: (1) conspiracy to defraud the government, in violation of 18 U.S.C. § 286 (Count 1); (2) conspiracy to use unauthorized access devices, in violation of 18 U.S.C. § 1029(b)(2) (Count 2); (3) use of unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(2) (Count 3); (4) eight counts of aggravated identity theft, in violation of 18 U.S.C. § 1029A(a)(1) (Counts 4 through 12); and (5) possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 13).

On May 21, 2014, a federal grand jury in the District of Minnesota returned a two-count indictment charging Defendant and three co-defendants, Ronnie Bussell, Christopher Torh, and Junior Tervil, with conspiracy to defraud the government, in violation of 18 U.S.C. § 286 (Count 1), and money laundering, in violation of 18 U.S.C. § 1957 (Count 2).

As the parties are aware, on October 30, 2013, Defendant filed a motion to dismiss the indictment in the District of Minnesota on the grounds that the Minnesota indictment violated the Fifth Amendment prohibition against double jeopardy. (Doc. No. 132.) In his motion, Defendant argued that the Florida and Minnesota schemes were identical and could not form the basis of multiple prosecutions.

On March 5, 2014, the undersigned adopted the Report and Recommendation filed by the Magistrate Judge, (Doc. No. 150), and denied Defendant's motion to dismiss. (Doc. No. 164.)  The Court, applying the five-part totality-of-the-circumstances test, concluded that the Florida and Minnesota indictments charged separate and distinct conspiracies to defraud the federal government.  *United States v. Thomas*, 759 F.3d 659 (8th Cir. 1985).  Specifically, the Court concluded that the time frames of the charged conspiracies were distinct as charged in the indictments, and that, "even if the schemes overlapped temporally, they remain separate conspiracies."  (Doc. No. 150 at 5.)  To repeat what was stated at that time, "[t]he schemes were not executed in the exact same way and each was committed by a distinct group of people in different states."  *Id.* Further, to repeat what was set forth in the Report and Recommendation with respect to the two conspiracies, the Court stated:

> In Florida, Pierre and his co-conspirators defrauded the IRS by submitting false tax returns and having refunds deposited onto debit cards.  In Minnesota, Pierre and his co-conspirators allegedly set up fake businesses and had the IRS refund money directly deposited into bank accounts that were set up to facilitate the scheme.  They then withdrew or transferred the money.  These factual differences weigh in favor of the Government.

*Id.* at 6 (internal citations omitted).  The Court further noted that the location of the two conspiracies were distinct "[b]ecause the Minnesota fraud scheme could not succeed absent the establishment of fake businesses and bank accounts in Minnesota."  *Id.* at 6.

Defendant has now filed a second motion alleging that the Minnesota indictment violates double jeopardy.  (Doc. No. 189.)  In support of this second motion, Defendant

3

quotes portions of the transcript from the sentencing hearing following Defendant's conviction at trial in the Southern District of Florida.

Close scrutiny of the trial transcript and the sentencing transcript clearly establishes that Defendant participated in two distinct schemes to defraud the United States government by filing fraudulent tax returns using stolen identity information. These schemes or conspiracies occurred during different time periods, involved different co-conspirators located in different states, and differed in the pattern and mode by which the fraud was carried out. Defendant was not held responsible in the Southern District of Florida trial for $6.9 million in tax refunds that he and the Minnesota co-conspirators received as part of the Minnesota scheme. The sentencing transcript also confirms that the Florida court did not consider any Minnesota conduct in imposing its sentence on Defendant in the State of Florida. *See* February 6, 2013 Sentencing Transcript at 38-39. Further, the July 2012 search warrant that resulted in the search of Defendant's residence in Florida was not signed by a Magistrate Judge in the District of Minnesota, as asserted by defense counsel. The warrant authorizing the search of Defendant's residence in Parkland, Florida, was signed on July 10, 2012, by Magistrate Judge Barry S. Seltzer of the United States District Court for the Southern District of Florida.

Consequently, the Court again concludes that Defendant participated in two conspiracies to defraud the federal government that were separate and distinct in terms of location, time, participants, nature, and scope. Close scrutiny of the record before the

Court clearly establishes that there were two separate conspiracies, even though similar crimes were committed. Finally, nothing that occurred during the Florida trial or sentencing hearing changes the Court's earlier conclusion that there was no double jeopardy violation and that, therefore, Defendant's motion to dismiss must be denied.

### B.   Defendant's Prosecutorial Misconduct Motion

Defendant has moved the Court to dismiss the indictment on the grounds that the government committed prosecutorial misconduct by presenting false and misleading testimony during is grand jury presentation.

Defendant asserts that the government committed prosecutorial misconduct during its grand jury presentation. Additionally, Defendant cites a brief quotation of grand jury testimony by an IRS agent, which Defendant claims falsely insinuated that Defendant physically hit the "send" button, causing the fraudulent tax returns to be electronically filed with the IRS. Defendant also asserts that the government misrepresented to the grand jury the source of bank records obtained during the investigation.

On the record before the Court, there is sufficient evidence that Defendant and his co-conspirators filed fraudulent tax returns. Frankly speaking, whether the government introduces evidence showing which individual physically pushed the "send" button to electronically file this tax return is not outcome determinative at this stage of the case and it is not likely to be outcome determinative with respect to proving the existence or nonexistence of a conspiracy when there are at least four individuals, as alleged in the indictment before the Court, involved in the conspiracy. Obviously, the government will

need to present evidence that the fraudulent tax returns were filed electronically, and received and processed by the IRS, demonstrating that at least some individual hit the "send" button.

The government has alleged that the fraudulent tax returns were submitted electronically to the IRS from an IP address registered to the Defendant's address in Florida.  The government has also alleged that the fraudulent tax returns were submitted using stolen social security numbers recovered from the Defendant's bedroom during a search in July 2012.  Further, the government alleges that the IRS deposited the fraudulent tax refunds into bank accounts opened by Defendant's co-conspirators in the name of several Minnesota-based companies set up by Defendant and his co-conspirators.  Obviously, as observed by the government, Defendant will be free to question government witnesses with respect to asserted contradictions between the grand jury testimony of Agent Price and the trial testimony of Agent Fry.

With respect to Defendant's motion relating to bank records, the Court has already rejected Defendant's claims, on an earlier occasion, that the government's collection of the bank records violated Defendant's right under the Fourth Amendment or the right to privacy under 12 U.S.C. §§ 3401-3422.  (Doc. No. 149; *see also* Doc. No. 164.)  With respect to the Right to Financial Privacy Act, even if the collection of bank records violated the Right to Financial Privacy Act, Defendant is not entitled to suppression of these records.  ("Notably, the Act does not contemplate suppression of financial records obtained by the Government in violation of the Act.")  (Doc. No. 147.)

Significantly, all of the bank records that have been produced to the defense have been obtained directly from the banks pursuant to grand jury subpoenas. It is true that some of the bank records had previously been secured from other sources, including during the execution of search warrants in early 2011. The fact remains, however, consistent with Agent Price's testimony, that the government obtained copies of all such records directly from the banks pursuant to a grand jury subpoena. On the record before the Court, contrary to Defendant's allegations, there is no evidence suggesting "flagrant misconduct and substantial prejudice" related to the grand jury proceedings which is required to obtain a dismissal on the basis of prosecutorial misconduct. *United States v. Tulk*, 171 F.3d 596, 598 (8th Cir. 1999).

## II.    CONCLUSION

For the reasons stated above, the Court denies Defendant's motion to dismiss for a violation of the Fifth Amendment prohibition against double jeopardy and Defendant's motion to dismiss for prosecutorial misconduct. Moreover, on the record before the Court, including the record in the Southern District of Florida, the interests of justice do not require this Court to grant Defendant's motions nor will a miscarriage of justice occur if the Court proceeds with trial in the above-entitled matter. For all of these reasons, the Court respectfully denies Defendant's motions to dismiss.

D.W.F.