UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 13-129 (DWF/HB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Frantz Pierre, | |
| Defendant. | |

Frantz Pierre, *Pro se.*

James S. Alexander, Joseph H. Thompson, and Karen B. Schommer, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Frantz Pierre's ("Pierre") *pro se* motion for compassionate release in light of the COVID-19 pandemic. (Doc. No. 433 ("Motion").) The United States of America (the "Government") opposes Pierre's Motion.[1] (Doc. No. 435.) For the reasons discussed below, the Court respectfully denies Pierre's Motion.

# BACKGROUND

On October 27, 2015, Pierre pled guilty to one count of conspiracy to defraud the government (Count 1), and one count of engaging in monetary transactions in criminally

---

[1] The Court also received and considered Pierre's reply to the Government's opposition. (Doc. No. 437 ("Reply").)

derived property (Count 2).   (Doc. No. 268; *see also* Doc. No. 1.)  On June 9, 2016, this Court sentenced him to 210 months' imprisonment to be followed by a 3-year term of supervised release.[2]  (Doc. No. 343.)

Pierre is currently incarcerated at Elkton FCI in Lisbon, Ohio with an anticipated release date of February 11, 2031.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited Jan. 6, 2021).  Elkton FCI reports 3 active COVID-19 cases among its inmates and 22 among its staff, and 877 inmates and 55 staff who have recovered from COVID-19.[3]  Federal Bureau of Prisons, COVID-19:

---

[2]     Pierre was convicted of carrying out two separate conspiracies to submit fraudulent tax returns in order to obtain millions of dollars in fraudulent tax refunds.  (*See* Doc. No. 400 at 2.)  He was charged and convicted following a jury trial in the Southern District of Florida.  (*Id.*)  Pursuant to that conviction, Pierre was sentenced to 208 months in prison which preceded the sentence in the case before this Court.  (*Id.*)  His conviction and sentence in the Southern District of Florida was affirmed on appeal.  *United States v. Pierre*, 825 F.3d 1183 (11th Cir. 2016).  All but 36 months of the sentence this Court imposed were to run concurrently to the 208-month sentence imposed in the Southern District of Florida.  (Doc. No. 343.)

Since his conviction, Pierre has filed numerous challenges to his conviction and sentence, all of which have been denied by this Court and the Eighth Circuit.  (*See, e.g.*, Doc. Nos. 384, 387, 400, 412, 421, 423, 424, 426, 429.)

[3]     At the beginning of the pandemic, FCI Elkton experienced a large outbreak of COVID-19 infections.  In mid-April 2020, a group of inmates there brought an emergency habeas action seeking the release of medically vulnerable inmates at the facility due to the spread of COVID-19 within the facility.  *See Wilson v. Williams*, 20 Civ. 794 (N.D. Ohio Apr. 13, 2020).  Pierre was included on a list of the medically vulnerable.  *See id.* at Doc. No. 22.  While the district court initially granted the petition, the Sixth Circuit vacated the decision on June 9, 2020.  *Wilson v. Williams*, 961 F.3d 829, 845 (6th Cir. 2020).  Since April 2020, testing at the facility has increased, and the infection rate has decreased.  *See* Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 6, 2021) (reporting just 3 active cases of COVID-19).

2

Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 6, 2021).  Sadly, 9 inmates in the facility have died from the virus.  *Id.*

Pierre now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he suffers from Wolf-Parkinson White Syndrome ("WPW"), heart failure, pre-diabetes, and chronic kidney disfunction.[4] (Motion at 1; Reply at 1-2; *see also* Doc. Nos. 433-6, 437 (collectively, "Medical Records")).)  Pierre supports his position with a letter from a doctor who asserts that Pierre's medical conditions place him at increased risk of severe illness from COVID-19. (Doc. No. 433-1 ("Letter").)

Moreover, Pierre asserts that he poses no threat to the safety of any other person or society, and that the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of his release.  (Motion at 4-6.)  He argues that under the circumstances, "a reduction [of sentence] is warranted wherein he is low security, has a release plan and is at risk in his current environment for needlessly contracting a serious and life threatening condition." (*Id.* at 7.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction."

---

[4] According to the Mayo Clinic, WPW is a rare genetic condition involving an extra electrical pathway between the heart's upper and lower chambers that may cause rapid heartbeat, dizziness, fatigue, shortness of breath, anxiety, chest pain, difficult breathing, or fainting.  *See* Mayo Clinic, Wolf-Parkinson White (WPW) syndrome, *https://www.mayoclinic.org/diseases-conditions/wolff-parkinson-white-syndrome/symptoms-causes/syc-20354626* (last visited Jan. 6. 2021).

18 U.S.C. § 3582(c)(1)(A)(i).  Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.  U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement."  Statement.  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[5]  *Id.*

---

5  Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

The record reflects that Pierre requested compassionate release from the warden at Elkton FCI on April 8, 2020.  (Doc. No. 433-4.)  His request was denied on April 24, 2020.  (Doc. No. 433-5.)  Accordingly, the Court finds that his Motion is properly before it.

After a careful review of Pierre's Motion and other documentation, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release.  Even if Pierre suffers from a medical condition that increases his risk of severe infection from COVID-19, the Court cannot conclude that Pierre no longer poses "a danger to the safety of any other person or the community."  Statement.  Moreover, the Court finds that the § 3553(a) sentencing factors weigh strongly against release.  18 U.S.C. § 3553(a).[6]

Pierre has served just a fraction of his 210-month sentence.  While he asserts that he no longer poses a threat to the safety of any other person or the community, the Court disagrees.  Tax fraud, albeit non-violent, still poses a threat to the safety of the community.  Moreover, the Court cannot overlook Pierre's prior criminal history.  (*See* Doc. No. 320 ¶¶ 75-79.)  Having served such a small portion of his sentence, the Court

---

[6] The Court cannot conclude from the available Medical Records that Pierre suffers from any medical condition that makes him particularly vulnerable to severe infection from COVID-19.  For starters, the Centers for Disease Control and Prevention ("CDC") does not include WPW or pre-diabetes as medical conditions that increase risk of severe infection.  *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Jan. 6, 2021).  Moreover, the Court cannot conclude from the Medical Records that Pierre suffers from chronic kidney disfunction or the extent of any alleged heart failure.  (*See* Medical Records.)  The Court declines to rely exclusively on the Letter.

cannot conclude that such a significant sentence reduction would adequately address the seriousness of the charges of Pierre's conviction, promote respect for the law or provide a just punishment.

It is truly unfortunate that so many individuals at Elkton FCI have been infected with COVID-19.  It is promising, though, that there are just 3 active cases of the virus at the facility.  Moreover, Elkton FCI continues to employ measures to mitigate its spread.[7]  Sadly, until there is a vaccine, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.  Here the factors weigh strongly against release.

---

[7]     The Court notes that effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited Jan. 6, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf*.  (last visited Jan. 6, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 6, 2021).  Since March, the BOP has transferred nearly 20,000 inmates to home confinement.  *Id.*

## CONCLUSION

For the reasons set forth above, the Court finds that Pierre is ineligible for compassionate release because it cannot determine that he no longer poses a threat to society and because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Frantz Pierre's styled motion for reduction of sentence and compassionate release (Doc. No. [433]) is respectfully **DENIED**.

Date:  January 7, 2021            s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge